**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DANIELLE ROLLO**                                    **CIVIL ACTION**

**VERSUS**                                                      **NO. 25-1051**

**PLAQUEMINES PORT HARBOR**                **SECTION "B" (1)**
**AND TERMINAL DISTRICT AND**
**CHARLES TILLOTSON**

**ORDER AND REASONS**

Before the Court is defendant Charles Tillotson's Motion to Dismiss (Rec. Doc. 7), plaintiff Danielle Rollo's opposition (Rec. Doc. 22), and Tillotson's reply (Rec. Doc. 23). Also before the Court is defendant Plaquemines Port Harbor and Terminal District's Motion to Dismiss (Rec. Doc. 10), plaintiff Rollo's opposition (Rec. Doc. 21), and the Port's reply (Rec. Doc. 24). For the following reasons,

**IT IS ORDERED** that the defendants' motions (Rec. Docs. 7, 10) be **GRANTED** and that Rollo's claims against the defendants be **DISMISSED WITH PREJUDICE** as time-barred**.** Alternatively, if not time-barred, her substantive claims are **DISMISSED WITHOUT PREJUDICE,** subject to filing **within 14-days** of a motion for reconsideration based on an amended complaint showing cause for same consistent with the analysis *infra*.

**I.      FACTUAL BACKGROUND**

Danielle Rollo ("Rollo") is the former Supervisor of the Plaquemines Port Harbor and Terminal District's ("Port") Human Resources Division. Rec. Doc. 1 at 9. She maintains that, following her refusal to accept an "involuntary reassignment" from her position as the Human Resources Supervisor, Charles Tillotson ("Tillotson")—the Executive Director of the Port—and other supervisors subjected her to escalating retaliatory disciplinary actions which forced her to

1

resign. *Id*. She sues the Port and Tillotson for violating her rights, specifically under the First, Fourth, and Fourteenth Amendments; the Americans with Disabilities Act ("ADA"); and the Louisiana Employment Discrimination Law ("LEDL"). But because her allegations do not support any claim at law, the Port's and Tillotson's motions to dismiss must be granted, and Rollo's claims dismissed.

The events leading to Rollo's resignation began on December 8, 2023, when Tillotson and Deputy Director and Executive Counsel, Melissa Folse, summoned Rollo to a meeting to discuss a proposed reassignment. Rec. Doc. 1 at 12. In the months prior, the Port undertook several measures to address what Tillotson allegedly deemed a "toxic work environment." *Id*. at 9–10. Rollo alleges that Tillotson and other supervisors were aware that the Port's toxic work environment unduly burdened her, especially because they knew she suffered from attention deficit disorder (ADD) and depression. *Id*. at 11, 42. Rollo claims that she informed supervisors that the working conditions caused her to "los[e] sleep" and hoped that they could "figure out a way to reduce the tension in the office." *Id*. at 42.

At the December 2023 meeting, Tillotson proposed that Rollo swap positions with another non-HR employee, Harrolynn Sherman, while she assumed an undefined role which would be lateral in nature without any salary changes. Rec. Doc. 1 at 12. Rollo states that the only justification offered for the proposed reassignment was to improve morale and reduce special treatment. Id. Rollo questioned whether she received special treatment, particularly as it concerned working remotely to care for a sick child, because she noted that other employees were permitted to work remotely under similar or less urgent circumstances. *Id*. After confirming with Civil Service that she could not be forced to change positions without her consent, Rollo informed Tillotson that she did not accept reassignment. *Id*. Despite this initial refusal, Rollo alleges that

Tillotson continued to raise the topic, and even provided her a tentative start of January 2024, before relenting once she "firmly reiterated her refusal[.]" *Id*.

Refusing to accept Tillotson's proposed reassignment was allegedly the start of several escalating retaliatory actions. On December 13, 2023, Rollo was "compelled" to attend a Civil Service Hearing involving a disciplinary matter between her supervisor and a fellow coworker. Rec. Doc. 1 at 14. Rollo was summoned as a witness to testify as to whether her coworker had bullied others. Id. Rollo testified that, though her coworker had engaged in disrespectful behavior, she had not bullied others. *Id*. But according to Rollo, this testimony was at odds with Tillotson's narrative, who had characterized the coworker's actions as bullying and encouraged discipline against her. Id. Within days of the hearing, Tillotson issued Rollo a disciplinary write-up,  alleging that Rollo used her phone during the hearing. *Id*. at 14–15. Though Rollo explained that she briefly used her phone to respond to repeated calls from her minor son, Tillotson allegedly replied that he did not care. Id. at 15. Rollo alleges that no official policy prohibited limited phone usage during hearings, and that similar conduct from other employees did not result in discipline. *Id*.

On January 17, 2024, Rollo was instructed to allow Sherman and Kourtnie Brown access to confidential HR files to assist with preparing employee records. Rec. Doc. 1 at 18. Rollo alleges that Sherman participated in all HR-related meetings, handled confidential materials, and reviewed personnel documents without any approved job description or official authorization. *Id*. at 18–19. Rollo states that she raised concerns about Sherman's access to HR files but was ignored. *Id*. at 19. Rollo believes that Tillotson and other supervisors' true intention was to force her out of her position. *Id*.

On February 6, 2024, Rollo responded in work-related group chat to what she perceived as a passive-aggressive comment from Brown. Rec. Doc. 1 at 17. Rollo and Brown switched to private text, wherein Brown allegedly directed vulgar and hostile comments at her and threatened to appear at her home. *Id*. Rollo documented these messages and reported them to her immediate supervisor, who in turn reported them to another supervisor and Tillotson. *Id*. Rollo alleges that she requested that "something be done in response." *Id*. Rollo claims that management never disciplined Brown because the incident occurred "off the clock" and "off campus"; however, on February 14, 2024, Tillotson instructed another supervisor to issue Rollo a coaching form for the incident. *Id*. at 17–18. Rollo claims she strongly objected to what she perceived as disparate treatment. *Id*. at 18.

On February 26, 2024, two of Rollo's supervisors informed her that her job title would be changed from "HR Supervisor" to "HR Analyst" because Rollo "is not supervising anyone." Rec. Doc. 1 at 20. Rollo contends that this change was made without a formal audit, Civil Service review, or acknowledgement of her actual duties which "routinely included supervisory functions, onboarding oversight, and confidential personnel management." *Id*. at 20. Rollo believes that the decision to alter her title was retaliatory and intended to marginalize her and force her to accept an unwanted job reassignment. *Id*. She also alleges that a title change would "significantly diminish[] her professional standing and influence within the Port[.]" *Id*.

Three days later, Tillotson directed one of Rollo's supervisors to hand her another coaching form. Rec. Doc. 1 at 21. This time, the basis of the coaching form was an email Rollo mistakenly sent to a non-HR employee containing confidential data. *Id*. Rollo states that she immediately corrected her error by telling the recipient to disregard the email. *Id*. Rollo alleges that the recipient instead chose to comb through the information provided and use what she learned to file a

grievance against Rollo. *Id*. Rollo states that instead of disciplining the coworker for poring over sensitive confidential information, management decided to focus exclusively on her, revealing a "double standard in disciplinary enforcement" which "further contributed to the hostile and retaliatory environment[.]" *Id*. at 22.

On March 20, 2024, Rollo's supervisors denied her request to attend a Human Resources conference to develop her skills after initially granting her permission. Rec. Doc. 1 at 22. Rollo alleges that her supervisors cited unspecified complaints as justification for their decision, including that Rollo "doesn't do her job" and "doesn't know what she's doing." *Id*. at 23. Rollo asserts that management instead allowed Sherman to attend the conference and asserts that the decision to allow Sherman to attend the conference represents "clear favoritism, a retaliatory motive, and a deliberate attempt to strip [Rollo] of advance opportunities in her field of career focus."

On April 19, 2024, Rollo's supervisors asked her about a vendor listed on the vendor list for an event called "Plaquemines Day": Dani's Cookie Co. Rec. Doc. 1 at 24. Rollo owned the business and had received permission from the parish employees to participate in the event and sell her cookies. *Id*. at 24–25. Rollo was paid $800 for her upcoming participation at the event. Rollo's supervisors asserted that the cookie sale was an unethical transaction because the customer had a contractual relationship with the Port. *Id*. at 25. Rollo disclaimed knowing about this purported connection before the sale. *Id*. Her supervisors also informed Rollo that she had risked termination and demanded that Rollo repay the $800. *Id*. Rollo complied with the demand to repay despite alleging that no evidence had been presented showing that her actions violated any Port policy. Rollo also asserts that other employees had "outside business ventures, participated in community events, and were never questioned or punished." *Id*. at 26.

Finally, on May 1, 2024, management handed Rollo a write-up for timecard fraud, based on a July 2023 timesheet error. Rec. Doc. 1 at 26. On May 3, 2024, Tillotson summoned Rollo's immediate supervisor to a meeting to discuss the alleged timecard fraud and to determine if others were also punished. *Id*. Despite the supervisor's statements that "others are being disciplined," Rollo contends that no other employee had been disciplined for timecard fraud. As such, "exhausted, harassed, and unable to continue," Rollo submitted her resignation on May 8, 2024, which became effective on May 24, 2024. *Id*. at 5, 26.

## II.     PROCEDURAL HISTORY

On February 22, 2025, Rollo initiated an Equal Employment Opportunity ("EEO") complaint, alleging that she was subjected to discrimination based on disability; that she was subjected to a hostile work environment; that she was retaliated against; that her rights under the Americans with Disability ("ADA") were violated; and that her "Civil Service of Rights" were violated. Rec. Doc. 1 at 5. On March 5, 2025, the Equal Employment Opportunity Commission ("EEOC") issued Rollo a "Notice of Right to File a Complaint of Discrimination." *Id*.

Rollo filed a complaint suing Tillotson and the Port on May 27, 2025. Rec. Doc. 1. She claims that Tillotson, and other supervisory officials not named as defendants, violated her rights under the First, Fourth, and Fourteenth Amendments; that Tillotson and the Port are liable for the violation of her rights pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978); that Tillotson and the Port violated her rights under the Americans with Disabilities Act ("ADA") and the Louisiana Employment Discrimination Law ("LEDL"); and that the Port is liable for the actions of Tillotson and other supervisory officials under the theories of *respondeat superior* and vicarious liability. *Id*.

The Port and Tillotson have moved to dismiss all claims against them. Rec. Docs. 7, 10. Rollo opposes the motions, though appears to abandon the *respondeat superior* and vicarious liability claims against the Port by acknowledging that she "agrees that the Port is not a supervisory official [*sic*] cannot be liable for actions of subordinates on any theory of vicarious liability." Rec. Doc. 21. Tillotson and the Port have replied in support of their motions to dismiss. The motions are ripe for adjudication.

### III.   <u>ANALYSIS</u>

#### A.    *Legal Standard*

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8's pleading standard demands more than "labels and conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A defendant may file a Rule 12(b)(6) motion to dismiss if they contend that a plaintiff's complaint does not satisfy Rule 8's pleading standard. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)). A claim is plausible when the pleaded facts allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the plaintiff is not entitled to relief. Id. at 679. A court must accept the complaint's factual allegations as true and draw "all reasonable inferences in the plaintiff's favor." Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009).

B.    *Analysis*

i.    <u>Timeliness of Rollo's Constitutional Claims</u>

The Court first addresses the timeliness of Rollo's Section 1983 claims. A court may grant a motion to dismiss on timeliness grounds when the pleadings make evident that a plaintiff's claims are time-barred. *Taylor v. Bailey Toll Mfg*. Co., 744 F.3d 944, 946 (5th Cir. 2014). Because there is no federal statute of limitations for Section 1983 actions, federal courts borrow from the forum state's limitations period for personal injury actions. *Redburn v. City of Victoria*, 898 F.3d 486, 496 (5th Cir. 2018). At the time of the alleged incidents—between December 2023 and May 2024—the limitations period for personal injury claims in Louisiana was one year. *See Porter v. Lemaire*, No. CV 25-1410, 2025 WL 3001932, at *3 (E.D. La. Sept. 22, 2025) (explaining that the one-year limitation period applies to actions arising before July 1, 2024). The prescriptive period commences when "the aggrieved party either has knowledge of the violation or notice of the facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Id*.

The Section 1983 claims here are untimely. Rollo's complaint makes clear that, at the time of each incident, she had "knowledge of the violation or notice of the facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Porter*, 2025 WL 3001932, at *3; *see also* Rec. Doc. 1 at 12, 14–15, 18, 20–22, 24, 26. Nowhere in Rollo's complaint does she allege that she learned of facts after the incidents occurred that put her on notice that her constitutional rights had been violated. Because the last incident complained of—Rollo's constructive discharge—occurred on May 8, 2024, the prescriptive period began to run on that date and Rollo was required to file her suit within a year. But given that Rollo did not file her suit until over a year later, on May 27, 2025, her Section 1983 claims are untimely.

Rollo resists this conclusion by relying on the continuing violation doctrine. Her effort is futile. The continuing violation doctrine is a federal common law doctrine governing accrual and extends limitations periods on otherwise time-barred claims. *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 740 (5th Cir. 2017). To demonstrate a continuing violation for the purposes of extending the applicable limitations period, a plaintiff must show that discrimination manifested itself over time rather than in a series of discrete acts. *Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003). The doctrine relieves a plaintiff from proving that the entire violation occurred within the prescriptive period only if the plaintiff can show at least one action that occurred within that same period. *Gaffney v. U.S. Dep't of Energy*, No. CIV.A 98-3772, 2000 WL 1036221, at *3 (E.D. La. July 25, 2000). The doctrine can be applied to hostile work environment claims precisely because "repeated conduct constitutes a part of the nature of hostile environment claims." *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir. 2004). Importantly, "as an equitable doctrine, the continuing violation doctrine should be 'applied sparingly,' and only when the situation calls for it." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002).

Rollo's reliance on the continuing violation doctrine fails for a simple reason: she has not identified a single violation that the Defendants allegedly committed within the one-year prescriptive period from May 8, 2024 to May 8, 2025. Though Rollo asserts she has alleged "a continuing pattern of discriminatory and retaliatory acts that stretched from 2019 through her constructive discharge in May 24, 2024," she has not pointed to any action from the Defendants that occurred from May 8, 2024 to May 8, 2025. Nor has she pointed to any action from Defendants that occurred within a year of May 27, 2025—the date she filed her suit. Mere continuity is not sufficient. What matters is whether Rollo can point to "one or more [acts] which falls within the

limitations period." *Gaffney*, 2000 WL 1036221, at *3. Rollo's complaint identifies May 1, 2024, as the last day that either Defendant allegedly violated Rollo's constitutional rights: Rollo was handed a write-up for timecard fraud.  Rec. Doc. 1 at 26. Rollo does not allege that Tillotson or the Port committed any other act against her after May 1, 2024, that contributed to the hostile work environment. Neither Rollo's resignation on May 8, 2024, nor her presence in the office until May 24, 2024, can be reasonably characterized as actions from Tillotson or the Port that contributed to the hostile work environment. As such, Rollo's continuing violation argument does not resuscitate her claims. Even if the Court agreed with Rollo that the appropriate prescriptive period was May 24, 2024 to May 24, 2025, Rollo's continuing violation argument would still fail because she is unable to identify any act from the Port or Tillotson that occurred within even this prescriptive period.

Nor does Rollo's *contra non valentem* argument have any purchase here. Under Louisiana law, this doctrine bars prescription against a person unable to bring an action. *In re Taxodore (Docetaxel) Prods. Liab. Litg*., 995 F.3d 384, 390 (5th Cir. 2021). The doctrine tolls prescription in four "exceptional circumstances":

> (1) where there was some legal cause which prevented the courts or their officers from acting or taking cognizance of the plaintiff's action; (2) where there was some condition or matter coupled with the contract or connected with the proceedings which prevented the plaintiff from availing himself of his cause of action; (3) where the defendant has done some act effectually to prevent the plaintiff from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.

*Id* (citing *Morgan v. Entergy New Orleans, Inc*., 234 So. 3d 113, 116, 120 (La. Ct. App. 2017). Rollo argues that the third and fourth categories apply to this case. Rec. Doc. 21 at 10. They do not.

The Court will start with the third category, which requires showing that the defendant acted in a way to prevent the plaintiff from availing themselves of their cause of action. Rollo asserts that her complaint "sets forth a systemic scheme of concealment, intimidation, and unauthorized policymaking designed to suppress employee rights." Rec. Doc. 21 at 11. She continues that the Port acknowledged that there was a toxic workplace, issued a Memorandum addressing the toxicity, and retained outside consultants, yet still failed to implement any protections. *Id*. She argues that the Port's actions led her to believe that remedial measures were underway. *Id*. Finally, she argues that the Port's concealment is "ongoing" and cites an incident from February 2025 in which the Port refused to provide her a copy of her personnel file because they are confidential and not provided to former employees. *Id*. These arguments are not convincing. Rollo appears to argue that she did not avail herself of her cause of action because the Port's actions led her to think that such action would be unnecessary. But Rollo does not point to any action from the Port or Tillotson that effectually prevented her from pursuing her claims in court once she knew of them. Additionally, Rollo does not explain how the February 2025 incident, wherein the Port allegedly refused to provide her with her personnel file, would toll prescription when it occurred after what she claims is the proper accrual date: May 24, 2024.

The fourth category, known as the discovery rule, tolls prescription when the cause of action is not known or reasonably knowable by a plaintiff. *In re Taxodore (Docetaxel) Prods. Liab. Litg.*, 995 F.3d 384, 390 (5th Cir. 2021). Actual knowledge is not required; constructive notice suffices. Id. at 391. Prescription runs "from the time there is notice to call for inquiry about a claim, not from the time when the inquiry reveals facts or evidence sufficient to prove the claim." *Id* (citing *Terrel v. Perkins*, 704 So. 2d 35, 39 (La. Ct. App. 1997)). Rollo had, at the very least, constructive notice by May 8, 2024, when she submitted her notice of resignation. Rec. Doc. 1 at

26; *see also Eastin v. Entergy Corp.*, 2003-1030 (La. 2/6/04), 865 So. 2d 49 ("On the other hand, learning of one's own termination does give rise to the knowledge of a cause of action and starts the proverbial clock's ticking."). Rollo asserts that she "remained subject to ongoing retaliatory oversight, false write-ups, and exclusionary practices" until her last day physically present at the Port: May 24, 2024. However, as discussed, Rollo's complaint does not allege that Tillotson or the Port committed any action against her after she received a write-up for timecard fraud on May 1, 2024. Rollo does not explain what Tillotson or the Port did after May 1, 2024, that constituted retaliation or discrimination. Because Rollo had constructive knowledge of her claims by May 8, 2024, the fourth category does not apply.

      ii.    <u>Rollo's First Amendment Claim (Count I)</u>

Even if Rollo's constitutional claims were timely, they would still fail for being inadequately pled. The Court begins with Rollo's First Amendment claim. She asserts that she has a free speech claim against Tillotson and the Port because they violated her free speech rights in two instances: (1) by subjecting her to continued pressure and a tentative reassignment date after she refused a reassignment proposal from Tillotson; (2) by objecting to non-HR personnel receiving access to sensitive HR files; and (3) by providing her a write-up for phone usage during a civil service hearing concerning a coworker's disciplinary matter. Rec. Doc. 21 at 15–16. To establish a Section 1983 claim for First Amendment retaliation, Rollo must show that (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in speaking outweighed the government's interest in efficiency; and (4) the protected speech motivated the adverse employment action. *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011). Rollo's First Amendment claim fails because her asserted speech does not relate to matters of public concern.

Rollo claims that her refusal to accept a proposed reassignment and objections to non-HR personnel having access to sensitive HR files constituted protected speech for First Amendment purposes. Not so. The Fifth Circuit has made clear that "[i]nternal personnel disputes and management decisions are rarely a matter of public concern." *Stotter v. Univ. of Texas at San Antonio*, 508 F.3d 812, 827 (5th Cir. 2007). Moreover, speech made solely in "furtherance of a personal employer-employee dispute" is not a matter of public concern. *Salge v. Edna Indep. Sch. Dist.*, 411 F.3d 178, 187 (5th Cir. 2005). Further, an employer's or manager's status as an arm of the government is not sufficient to convert solely personal matters to a matter of public concern. *Id*. Because Rollo's refusal to accept reassignment and her objection to non-HR personnel accessing HR files concerned solely internal personnel disputes and management decisions, her speech in these instances does not warrant First Amendment protection. Moreover, there is no indication that Rollo attempted to publicize either her refusal to accept the reassignment or what she believed to be an improper reassignment offer. *See Stotter*, 508 F.3d at 829 (holding that plaintiff's First Amendment retaliation claim lacked merit, in part, because no evidence suggested that plaintiff attempted to publicize allegations of corruption).

The same conclusion applies to Rollo's claims concerning her participation in the December 13, 2023 civil service hearing. Rollo alleges that she was compelled to attend this hearing and provide testimony concerning whether a coworker's actions constituted bullying. Rec. Doc. 1 at 14. But testimony pursuant to one's official duties does not constitute protected speech for First Amendment purposes. *See Harrison v. Lilly*, 854 F.App'x 554, 556 (5th Cir. 2021) ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their

communications from employer discipline."). Rollo's testimony was pursuant to her responsibilities as the HR Supervisor and therefore does not merit First Amendment protection.

### iii.    Rollo's Fourth Amendment Claim (Count I)

Rollo's Fourth Amendment claims also fails. She alleges that defendants violated her Fourth Amendment rights by "repeatedly forcing her to share access to and delegate control over confidential HR files to unauthorized personnel" and that this constituted an "invasion of privacy." Rec. Doc. 1 at 30. The flaw with Rollo's argument is that she does not explain how her privacy interests were violated. To make a Fourth Amendment search claim, Rollo must demonstrate that she had a reasonable expectation of privacy. *Perre v. E. Bank Consol. Special Serv. Fire Prot. Dist.*, 741 F. Supp. 3d 488, 496 (E.D. La. 2024). This test requires (a) an actual (subjective) expectation of privacy that (2) society is prepared to recognize as reasonable. *Id*. Additionally, the Supreme Court has recognized that "the operational realities of the workplace . . . may make some employees' expectations of privacy unreasonable." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987). Rollo does not explain how she can have a reasonable expectation of privacy in the Port's confidential files concerning other employees. She also does not explain how the Port's management decision to allow non-HR employees to access HR files violates her reasonable expectation of privacy. These failures are critical and require holding that Rollo has not stated a viable Fourth Amendment claim.

### iv.    Rollo's Fourteenth Amendment Claims (Count I)

Rollo asserts both substantive and procedural due process claims against the Port and Tillotson. Rec. Doc. 1 at 28. Both must be dismissed. The Court will start with Rollo's procedural due process claim. A procedural due process claim requires deprivation by state action of a protected interest in life, liberty, or property and inadequate state process. *Reed v. Goertz*, 598 U.S.

230, 236 (2023). As such, Rollo is required to identify a protected property or liberty interest. In her opposition, she clarifies that she had a protected property interest in her civil service position which was infringed when she was constructively discharged as well as a protected liberty interest in her professional reputation and ability to obtain future employment which was infringed when defendants brought an allegation of timecard fraud against her. Rec. Doc. 21 at 18. Rollo's constructive discharge due process claim fails because she did not allege that Tillotson or the Port acted to avoid affording pretermination hearing procedures. *See Ordonye v. Clement*, No. CV 24-2084, 2025 WL 2145842, at *7 (E.D. La. July 29, 2025) (explaining that to state a constructive discharge procedural due process claim, a plaintiff must allege that the employer acted to avoid affording pretermination hearing procedures).

Her reputational due process claim likewise fails. Reputation alone is not a constitutionally protected interest. *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981). Instead, a plaintiff's liberty interest is infringed only when they are discharged "in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities." *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006). The Fifth Circuit employes a seven-element "stigma-plus-infringement" test to determine whether Section 1983 affords a government employee's liberty interest in this context has been infringed. Id. That test requires a plaintiff to show that (1) she was discharged; (2) stigmatizing charges were made against her in connection with the discharge; (3) the charges were false; (4) she was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) she requested a hearing to clear her name; and (7) the employer denied the request. *Id*. Rollo has not satisfied this test. She has not alleged that the charges against her were made public, that she requested a name-clearing hearing, or that she was denied one. Her refusal to do so is fatal to her

claim. *See Ristow v. Hansen*, 719 F. App'x 359, 366 (5th Cir. 2018) (holding that plaintiff failed to state a due process violation under the "stigma-plus-infringement" test when he failed to allege that charges were made public, that he requested a hearing to clear his name, or that the request was denied). Given these inadequacies, Rollo has not shown that she has a reputational due process claim against the Defendants.

Nor has Rollo adequately alleged a substantive due process claim against the defendants. To assert a substantive due process claim, Rollo must clear a high bar and allege conduct that is "so brutal, egregious, outrageous, or violative of the decencies of civilized conduct as to rise to the level required to shock the conscience." *Van Deelen v. Cain*, 628 F. App'x 891, 897 (5th Cir. 2015) (citing *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex. rel. Keys*, 675 F.3d 849, 867–68 (5th Cir. 2012)). A plaintiff can also point to action that is arbitrary or capricious. *Moulton v. Cty of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993). The substantive due process clause covers "only the most egregious official conduct" and "will rarely come into play." *Jordan v. Fisher*, 823 F.3d 805, 812–13 (5th Cir. 2016).

Rollo appears to assert that defendants violated her substantive due process rights by constructively discharging and bringing unsubstantiated charges against her. Rec. Doc. 1 at 30; see also Rec. Doc. 21 at 19. But these actions are not "so brutal, egregious, outrageous, or violative of the decencies of civilized conduct" that "shock the conscience." *Van Deelen*, 628 F. App'x at 897. Moreover, the discipline that Rollo received "had a basis in undisputed fact" (e.g., disciplined for phone usage, disciplined for timecard error, etc.) and was therefore not arbitrary or capricious. *See, e.g., Lewis v. Univ. of Texas Med. Branch at Galveston*, 665 F.3d 625, 630–31 (5th Cir. 2011) (finding that termination decision did not violate due process because it was supported by undisputed facts).

16

Finally, Rollo makes clear in her Opposition that she has asserted a Fourteenth Amendment Equal Protection challenge against the defendants which she asserts they "entirely fail[] to address[.]" Rec. Doc. 21 at 19. After review of Rollo's complaint, it does not appear that Rollo specifically asserted an Equal Protection claim against Defendants. However, Rollo does allege that she was treated less favorably than similarly situated employees and that such disparate treatment was motivated by discriminatory animus. *See* Rec. Doc. 1 at 29. The Court will construe Rollo's complaint to assert an Equal Protection claim. However, this claim fails. Rollo does not identify in her complaint or opposition for which protected class she is seeking equal protection. *See Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (stating that a Section 1983 equal protection claim requires showing that "a state actor intentionally discriminated against the plaintiff because of membership in a protected class."). To the extent that Rollo argues that she was treated less favorably because of her disability, this argument fails because Section 1983 is not available for the deprivation of statutory rights when the statute itself provides the exclusive remedy for violation of its terms. *Montgomery-Smith v. Louisiana Dep't of Health & Hosps*., 299 F. Supp. 3d 790, 806 (E.D. La. 2018). The ADA provides the exclusive remedy for Rollo's disability-related claims. Finally, though Rollo appears to tie her equal protection claim to her hostile work environment claim, *see* Rec. Doc. 21 at 19, the Fifth Circuit has not recognized a Section 1983 hostile work environment claim based on violation of equal protection rights. *See Fields v. Stephen F. Austin State Univ*., 611 F.App'x 830, 833 (5th Cir. 2015).

v.    Rollo's ADA and LEDL Claims (Counts III and IV)

Rollo asserts both ADA and LEDL claims against the Port. Claims brought under the LEDL are analyzed using the same framework and precedent as ADA claims. *Johnson v. JP Morgan Chase Bank, N.A*., 293 F. Supp.3d 600, 611 (W.D. La. 2018). To state an ADA disability-

based harassment claim, a plaintiff must show that "(1) she is disabled within the meaning of the ADA; (2) she was subjected to unwelcomed harassment based on her disability; (3) the harassment was so severe or pervasive, it altered a term, condition, or privilege of employment; and (4) the employer knew or should have known of the harassment and failed to take prompt, remedial action." *Williams v. Petroleum*, No. CV 18-1012-JWD-SDJ, 2021 WL 649786 (M.D. La. Feb. 3, 2021). Rollo's disability claims fail because she does not allege that she was subjected to unwelcomed harassment based on her disability.

Rollo alleges that she informed supervisory officials that she suffers from ADD and depression. Rec. Doc. 1 at 11, 42. However, Rollo fails to allege that she was subjected to harassment because of her disability. Though Rollo describes at length the actions the Port or Tillotson took against her—e.g., proposed reassignment, disciplinary writeup for phone usage, coaching forms, writeups for timecard fraud—at no point does she allege that either defendant undertook these actions because of her disability. Rollo argues that her complaint makes clear that the harassment was based on her disabilities. In support, she states that her ADD was "aggravated" and her depression was "worsened" by the toxic environment in the office. Rec. Doc. 21 at 24. But this argument does not save Rollo's claims. At issue is whether Rollo was subjected to discrimination because of her disability, not whether defendants' actions "aggravated" or "worsened" her condition. Neither her complaint nor opposition addresses this critical question, and therefore Rollo's ADA and LEDL claims fail.

vi.    <u>Rollo's Monell Claim (Count II)</u>

Given what has been explained thus far, Rollo's Monell claim must be dismissed. Municipal liability under Section 1983 requires proof of (1) a policymaker; (2) an official policy; and (3) a violation of federal rights whose "moving force" is the policy or custom. *Piotrowski v.*

*City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978)). Because the Court holds that Rollo has not alleged the violation of any of her federal rights, the Court necessarily must find that she has not adequately alleged a Section 1983 Monell claim.

    vii.    <u>Rollo's Respondeat Superior and Vicarious Liability Claims (Counts V and VI)</u>

Rollo's final claims against defendants are state law respondeat superior and vicarious liability under Louisiana Civil Code Article 2315. Rec. Doc. 1 at 48–49. She alleges that the Port is "liable for all state law torts alleged herein" and that the Port, through Tillotson, is liable for damages caused by "their illegal ADA discrimination[.]" *Id.* However, Rollo appears to abandon these claims as asserted against the Port, stating in her opposition that "the Port . . . cannot be liable for actions of subordinates on any theory of vicarious liability." Rec. Doc. 21 at 29. The Court therefore holds that Rollo's respondeat superior and vicarious liability claims against the Port must be dismissed. However, these claims against Tillotson remain. But because these claims have prescribed and cannot be maintained in lieu of the existence of more specific statutory remedies provided by the LEDL, these claims as asserted against Tillotson must also be dismissed.

First, these claims are time-barred for the reasons provided in the section concerning the timeliness of Rollo's constitutional claims. The Louisiana Civil Code provides that "delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained." La. Civ. Code. Art. 3492. This one-year prescriptive period applies to actions brought under Louisiana Civil Code Article 2315. *See Bowie v. Hodge*, No. CV 20-2441, 2021 WL 53312, at *9 (E.D. La. Jan. 6, 2021). Because Rollo's respondeat superior and vicarious liability claims are brought under Article 2315, her claims are subject to the one-year prescriptive period. Rollo alleges that Tillotson last acted against her on May 1, 2024,

when he was involved in disciplining her for timecard fraud. Rollo then resigned on May 8, 2024. Her claims are therefore prescribed because she did not file this suit until over a year later, on May 27, 2025. Nor do Rollo's continuing violation and contra non valentem arguments save these claims, for the reasons already provided.

Second, general state tort claims, particularly in the employment discrimination context, are inconsistent with the specific remedies provided by the LEDL and should be dismissed when a LEDL claim is also asserted. *See, e.g., Thomas v. United Rentals, Inc*., No. 21-510, 2022 WL 17834073, at *8 (M.D. LA. Aug. 9, 2022) (holding that plaintiff's claims under Articles 2315 fail because the LEDL provides the "exclusive remedies in state law for claims by employees against employers for retaliation and/or employment discrimination). Because Rollo's Article 2315 claims are redundant of her ADA and LEDL claims against Tillotson, they should be dismissed. Further, because the LEDL does not create a cause of action against individual co-employees, only employers, Rollo cannot maintain her LEDL claim against Tillotson. S*ee Notariano v. Tangipahoa Par. Sch. Bd*., 26 F. Supp. 3d 919, 928 (E.D. La 2017); *see also Provensal v. Gaspard*, 524 F.App'x 974, 976 (5th Cir. 2013) (characterizing employment claim against individual supervisor as "frivolous").

Rollo asserts that there is an exception to the LEDL's exclusivity rule when a plaintiff also alleges related intentional tort claims. Rec. Doc. 24 at 10 (citing LA. R.S. 23:1032(B)). Rollo asserts that she has alleged an intentional infliction of emotional distress ("IIED") claim. But she has not. Rollo's complaint is absent of any reference to an IIED claim. She mentions an IIED claim for the first time in her opposition to Tillotson's motion to dismiss. *See* Rec. Doc. 24 at 10. But even if Rollo had asserted an IIED claim, it would fail based on Rollo's current allegations. The elements of an IIED claim are: (1) that defendant's conduct was extreme and outrageous; (2) that

plaintiff suffered severe emotional distress; (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. Sept. 9, 1991). The first element requires that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. The conduct that Rollo challenges, e.g., reassignment proposals, disciplinary writeups for timecard errors and phone usage, denial of telework requests, etc., do not rise to extreme and outrageous conduct.

       viii.    Qualified Immunity

Tillotson asserts that he is entitled to qualified immunity. The Court agrees. In an individual-capacity suit, a defendant may raise the defense of qualified immunity, which shields from liability government officials acting within their discretionary authority when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. *Wallace v. Cnty of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). To overcome this defense, a plaintiff must therefore allege the violation of a clearly established right and that the defendant's conduct was objectively unreasonable. *Shaw v. Villanueva*, 918 F.3d 414, 416–17 (5th Cir. 2019). Rollo has not overcome this defense; specifically, she has not shown that Tillotson violated any clearly established statutory or constitutional right. As explained, Rollo's claims pursuant to the ADA/LEDL, as well as the First, Fourth, and Fourteenth Amendment, are without merit.

For the reasons provided, Tillotson's and the Port's motions to dismiss (Rec. Docs. 7, 10) are **GRANTED**. Rollo's claims are hereby **DISMISSED WITH PREJUDICE**. Alternatively, if

not time-barred, her substantive claims are **DISMISSED WITHOUT PREJUDICE**—subject to a timely motion for reconsideration if plaintiff files an amended complaint and shows good cause for such consistent with the foregoing analysis of her complaint **within 14-days**.

New Orleans, Louisiana, this 6th day of March 2026

_____
SENIOR UNITED STATES DISTRICT JUDGE